IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MINNIE MCCALL, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:14-cv-1113-MHT-GMB |
| | ) | [WO] |
| MONTGOMERY HOUSING | ) | |
| AUTHORITY, *et al.*, | ) | |
| | ) | |
|    Defendants. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is a motion to dismiss *pro se* Plaintiff Minnie McCall's second amended complaint filed by Defendants Montgomery Housing Authority ("MHA") and Evette Hester. Doc. 41. This matter has been referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 5. Having reviewed the parties' filings and the applicable legal authority, the undersigned RECOMMENDS that the defendants' motion to dismiss be GRANTED IN PART and DENIED IN PART, as set forth below.

### I. FACTUAL AND PROCEDURAL HISTORY

**A.   Facts**

On February 17, 2017, McCall filed her second amended complaint, which is the operative pleading before the court.[1] This pleading is not a model of clarity, which has

---

[1] In a separate Opinion and Order entered on this date, the court denied McCall's request to file a third amended complaint (or fourth complaint).

made it difficult for the court to ascertain with any precision exactly what McCall is alleging. However, after a careful and lenient review of the second amended complaint, the court concludes that McCall is alleging the following claims against one or more of the defendants:

(1) a violation of the Fair Housing Act based on the entry of McCall's housing unit for an inspection on October 24, 2012 without giving her prior notice of the inspection;

(2) a violation of the Americans with Disabilities Act ("ADA") based on MHA's denial of a "reasonable accommodation" for McCall at MHA meetings;

(3) a violation of the ADA based on the denial of a "reasonable accommodation" when Nona Eath refused to give McCall an extension on a housing choice voucher, which resulted in the denial of her housing;

(4) forcing McCall, an African American, to live in segregated areas as a result of the defendants' housing policies;

(5) MHA's denial of McCall's safe housing rights and "human rights" through fraudulent inspections performed by McCright & Associates;

(6) Eath and inspectors from McCright & Associates "verbally abused" McCall;

(7) Hester denied McCall safe housing by "the act of omission" and "gross negligence" in her official capacity;

(8) the "Board of Directors"[2] denied McCall safe housing by the "act of omission";

(9) Eath denied McCall safe housing by abusing her power in her official capacity;

(10) MHA's Deputy Director Charina Allen-Beasley denied McCall the

---

[2] The court assumes that McCall meant to reference the Board of Commissioners and not a Board of Directors in this paragraph.

        ability to "port out" of her current housing and, therefore, denied her safe housing;

(11)    MHA conspired with the owner of her housing unit, Bristol Downs Apartment Complex ("Bristol Downs"), to spray heavy pesticides in her unit after she complained about MHA and Bristol Downs, making McCall and her family sick;

(12)    MHA violated the ADA by failing to accurately warn Bristol Downs about the proper use of pesticides and by permitting children to be exposed to toxins;

(13)    MHA, Eath, Yvette Hester,[3] and the Board of Commissioners abused their power and engaged in gross negligence by allowing paint to peel in her unit, causing McCall and her daughter to have unexplained illnesses;

(14)    MHA attempted to stop McCall from making a fair housing complaint after she reported that the inspector spoke with "racial under tones" and was "talking verbally abusive" to her;

(15)    MHA used her housing choice voucher to force her to attend a meeting and denied her the option to "port out"; and

(16)    a generic claim for injunctive and declaratory relief.

Doc. 35. The court has twice ordered McCall to file an amended complaint that clearly sets forth her claims, identified by separate counts in separately numbered paragraphs, and that identifies and labels the specific causes of action she is asserting against each defendant. Docs. 9 & 30. Despite these clear directives, McCall's second amended complaint still does not identify and label the specific causes of action she is asserting against each defendant, nor does she identify which specific facts support which claims and which claims are asserted against which defendants. Doc. 35. The court and the

---

[3] McCall incorrectly refers to Defendant Evette Hester as Yvette Hester, but the court uses her correct name.

defendants are essentially left to guess as to the nature of McCall's claims.

## B. Procedural History[4]

McCall filed her original complaint on October 24, 2014. Doc. 1. She has since amended her complaint twice, with the second amended complaint being the operative pleading before the court. Docs. 10 & 35.

On March 28, 2017, MHA and Hester moved to dismiss the second amended complaint. Doc. 41. McCall filed her response on April 11, 2017, and the defendants replied on April 17, 2011. Docs. 43 & 45. With briefing completed, the motion is ripe for resolution by the court.

## II. STANDARD OF REVIEW

The defendants seek the dismissal of McCall's second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff is required to provide a short and plain statement of the claim showing entitlement to relief." *Andrews v. City of Hartford*, 2017 WL 2829375, at *1 (11th Cir. June 30, 2017) (citing Fed. R. Civ. P. 8(a)(2)). "The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests." *Kamau v. Slate*, 2013 WL 1883257, at *1 (N.D. Fla. Apr. 4, 2013). "While the complaint need not make detailed factual allegations, it must provide more than labels, conclusions, and formulaic

---

[4] The previously entered Opinion and Order denying the defendants' motion to strike and for sanctions and McCall's motion to amend provides a detailed recitation of the procedural history of this case. For brevity's sake, this Report and Recommendation will provide only a summary of the case's procedural history as it relates to the pending motion to dismiss.

recitations of the elements of the cause of action." *Andrews*, 2017 WL 2829375, at *1 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The factual allegations must be sufficient to raise the right to relief above the speculative level." *Id.* To do this, "the plaintiff's factual allegations cannot simply be consistent with the defendant's liability; rather, they must be sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Conclusory allegations do not 'unlock the doors of discovery' for plaintiffs." *Id.* (quoting *Iqbal*, 556 U.S. at 678–79). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

A court must accept the factual allegations of the complaint as true, and dismissal is not permissible simply because the court may not believe a complaint's factual allegations. *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1334–35 (11th Cir. 2005). "'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will . . . be liberally construed.'" *Kamau*, 2013 WL 1883257, at *1 (quoting *Tannebaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). However, while *pro se* complaints are held to less stringent standards than those drafted by an attorney, "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [her]." *Fishbein v. Stewart Cnty. Housing & Comm'n*, 2008 WL 4500056, at *1 (M.D. Ga. Sept. 30, 2008).

## III.  DISCUSSION

A.  **Claims Against Nona Eath and the Montgomery Board of Commissioners**

One of the grounds on which McCall sought leave to file her second amended complaint was to add new defendants. *See* Doc. 25.  The court granted her request to amend, and McCall filed her second amended complaint in February 2017, naming Nona Eath and the Montgomery Board of Commissioners as additional defendants. Doc. 35. McCall had 90 days after she filed her second amended complaint to perfect service on those defendants, making her original service deadline May 18, 2017. *See* Fed. R. Civ. P. 4(m).  However, this deadline was extended to May 24, 2017.[5] Doc. 36.

For reasons unknown to the court, even though McCall was granted *in forma pauperis* status in February 2016 the Clerk's office did not issue a summons with a copy of the second amended complaint to Eath and the Montgomery Board of Commissioners when the second amended complaint was filed.  Rather, service materials were not issued to these defendants until April 27, 2017. Doc. 47.

On May 3, 2017, the summons to Eath was returned unexecuted with the notation "Return to Sender, Not Deliverable as Addressed, Unable to Forward." Doc. 48.  McCall made no further attempts to serve Eath.  The docket sheet reflects that on May 5, 2017, an individual named Tammy L. Nix accepted service on behalf of the Montgomery Board of Commissioners. Doc. 51.  However, on May 18, 2016, the Clerk's office received a letter

---

[5] The court extended McCall's deadline to perfect service on Eath and the Montgomery Board of Commissioners after withdrawing its Report and Recommendation to dismiss the second amended complaint for failure to prosecute.

from attorney Thomas T. Gallion returning the summons and second amended complaint sent to the Montgomery Board of Commissioners. Doc. 52. Gallion explained that these documents had actually been mailed to the Montgomery County Commission, which is not affiliated with MHA. Doc. 52. Gallion requested that the Clerk's office return the documents to McCall for proper service. Doc. 52.

On May 19, 2017, the Clerk's office issued an alias summons with a copy of the second amended complaint to the Montgomery Board of Commissioners. Doc. 53. On May 25, 2017, the alias summons was returned unexecuted with the notation "Return to Sender, Refused." Doc. 54. A docket entry dated June 26, 2017 reflects that James E. Beck, III, attorney for MHA, returned mail delivered to the Montgomery Board of Commissioners from the Clerk's office and explained that there is no such entity as the Montgomery Board of Commissioners to accept service.

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." To date, there is no evidence in the record showing that Eath or the Montgomery Board of Commissioners were served in accordance with Rule 4(m) or that good cause exists to excuse McCall's failure to serve these defendants in a timely manner or to persuade the court to exercise its discretion to extend the service deadline. Indeed, McCall's second amended complaint was filed on February 17, 2017, and although seven months have passed, she still has not properly served either defendant. For these reasons, the undersigned recommends that the defendants' motion to dismiss be GRANTED with

respect to Eath and the Montgomery Board of Commissioners and that McCall's claims against those defendants be DISMISSED WITHOUT PREJUDICE for failure to perfect timely service under Federal Rule of Civil Procedure 4(m). *See Pardazi v. Cullman Med. Ctr.*, 896 F.3d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served."); *Hart v. Zimmerman Holdings Group, Inc.*, 313 F.R.D. 671, 673–74 (S.D. Fla. 2016) (granting motion to dismiss and dismissing claims without prejudice for failure to perfect service on defendant in accordance with Rule 4(m)'s deadline).

The court recommends dismissal of McCall's claims against the Montgomery Board of Commissioners for an additional reason. The record reflects that there is no such entity as the Montgomery Board of Commissioners, and McCall has presented no argument, allegation, or evidence showing that the Montgomery Board of Commissioners is an entity that (1) actually exists and (2) is connected in any way to the activities and injuries forming the basis of the claims she asserts in the second amended complaint. To the contrary, MHA contends that any claims McCall alleges against the Montgomery Board of Commissioners are duplicitous of her claims against MHA, and McCall has not disputed that contention. Accordingly, the undersigned recommends that McCall's claims against the Montgomery Board of Commissioners be DISMISSED WITHOUT PREJUDICE as duplicitous of the claims against MHA.

**B.   Claims for Injunctive and Declaratory Relief**

McCall generally requests injunctive and declaratory relief "for violations of the Fair Housing Act as it pertains to the Plaintiff and her household." Doc. 35. "In order to

receive declaratory or injunctive relief, [a] plaintiff[] must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Clay v. Thompson*, 2014 WL 3655990, at *6 (M.D. Ala. July 23, 2014) (internal quotation marks omitted) (alterations to original). Additionally, the plaintiff must show a substantial likelihood that she will be affected by the allegedly unlawful conduct in the future. *Alcocer v. Bulloch Cnty. Sheriff's Office*, 2017 WL 227793, at *6 (S.D. Ga. Jan. 18, 2017).

McCall alleges that the defendants are violating the Fair Housing Act by forcing her to live in segregated and unsafe areas, by conducting past fraudulent inspections of her unit, and by spraying heavy pesticides in her unit causing illness. However, the second amended complaint does not allege that there is a serious risk of continuing irreparable injury to McCall if some manner of relief is not granted or that there is a substantial likelihood that she will be injured by the allegedly unlawful conduct of the defendants in the future. The second amended complaint also does not allege precisely the type of injunctive or declaratory relief McCall is seeking or the future injury that will be remedied through the requested equitable relief. Instead, McCall simply includes the generic buzzwords "injunctive relief" and "declaratory relief" in her second amended complaint without articulating specific factual allegations to support those claims.

In short, McCall has failed to allege a real and immediate threat of future injury caused by the conduct of any of the defendants that warrants injunctive or declaratory relief. Generic terminology without sufficient factual allegations raising the right to relief on those claims above the speculative level is not enough to avoid Rule 12(b)(6) dismissal.

For those reasons, the undersigned recommends that the defendants' motion to dismiss McCall's claims for injunctive and declaratory relief be GRANTED and that those claims be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

**C.     Due Process Claim**

The only claim McCall actually labeled in her second amended complaint is one for a violation of her due process rights. Doc. 35.  However, beyond labeling this claim, McCall provides little in the way of factual allegations to frame the scope of this claim. That begin said, from a lenient review of the second amended complaint, the court concludes that McCall is intending to assert a claim for procedural due process based on the inspection and spraying of pesticides in her unit without giving her prior notice, the denial of an extension on her housing choice voucher, and the negligent actions of the defendants that caused paint to peel in her housing unit and her unit to smell like mildew, mold, and sometimes pesticide.[6]

An action under 42 U.S.C. § 1983 alleging a procedural due process violation consists of three elements: (1) a deprivation of a constitutionally protected liberty or

---

[6] McCall's allegations with respect to her "due process" claim exemplify the confusing nature of her pleadings and have put the court in the difficult position of interpreting her intentions with respect to her claims.  For example, the paragraph of allegations under the claim labeled "Due process" states precisely as follows:
> Plaintiff is claiming that MHA, Eath, The Board of Commissioners, and Hester's abuse of Power, Gross Negligence and omission lead to the decaying peeling paint where Plaintiff resided August 2012 until August 3, 2016.  The air vent in Plaintiff bedroom smelled like mildew/and Mold and sometimes pesticide.  MHA could at any time contracted an independent inspector perform an audit inspection, yet the defendants did nothing while both the plaintiff and daughter are still having unexplained illness that began at Plaintiff old resident such unexplained headaches, chronic breathing problem and extreme pain.

Doc. 35.

property interest; (2) state action; and (3) constitutionally inadequate process. *Doe v. Fla. Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011). Although recipients of Section 8 housing benefits have a property interest in continued receipt of those benefits, *see Ely v. Mobile Housing Bd.*, 13 F. Supp. 3d 1216, 1224 (S.D. Ala. Apr. 7, 2014), the second amended complaint does not specify the type of constitutionally protected interest McCall is asserting as a basis for this claim. Moreover, even if it was apparent from the face of the second amended complaint what type of constitutionally protected interest forms the basis of McCall's procedural due process claim, she does not allege state action or constitutionally inadequate process, both of which are necessary elements of this claim. Doc. 35.

The court has given McCall multiple opportunities to amend her complaint to state her claims more clearly, and she has failed to do so. Based on the second amended complaint, the court cannot discern the basis of McCall's procedural due process claim and cannot find that she has alleged that claim properly. Consequently, the undersigned recommends that the defendants' motion to dismiss McCall's due process claim be GRANTED and that this claim be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

**D.    Negligence and Civil Conspiracy Claims**

A generous reading of the second amended complaint suggests that McCall may be attempting to assert claims for negligence and civil conspiracy against the defendants. To the extent McCall is intending to allege one or both of these claims, she has failed to plead them in a manner sufficient to overcome the defendants' Rule 12(b)(6) challenge.

McCall alleges that MHA colluded with the owner of her housing unit at Bristol Downs after she made complaints concerning MHA and the apartment complex and the spraying of pesticides in her unit. Doc. 35. Although McCall does not mention 42 U.S.C. § 1985 in the second amended complaint, based on the nature of her allegations, the court presumes that she is intending to assert a claim for civil conspiracy to interfere with her civil rights. The elements of this cause of action are (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in further of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *McClure v. Houston Cnty., Ala.*, 306 F. Supp. 2d 1160, 1164–65 (M.D. Ala. 2003).

The allegations in the second amended complaint fall far short of pleading a viable civil conspiracy claim. At most, McCall speculates that MHA and Bristol Downs were "colluding," but she does not articulate any specific facts to support this claim. Thus, to the extent McCall is alleging a claim for civil conspiracy, the undersigned recommends that the defendants' motion to dismiss this claim be GRANTED and that this claim be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

The court reaches the same conclusion with respect to McCall's negligence claim, to the extent such a claim is even alleged in the second amended complaint. The elements of a negligence claim are (1) the defendant owned the plaintiff a duty; (2) the defendant breached that duty; (3) the plaintiff suffered a loss or injury; and (4) the defendant's breach

was the actual and proximate cause of the plaintiff's loss or injury. *See Dortch v. Enter. Rent-A-Car Co.*, 2009 WL 2008485, at *2 n.1 (M.D. Ala. July 9, 2009) (citing *DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008)). McCall uses the words "gross negligence," and does allege that the defendants allowed the spraying of pesticides in her unit. Doc. 35. Importantly, however, McCall does not allege that any of the defendants owed her a duty, that the defendants breached that specific duty, or that she suffered a loss or injury as a result of the breach of that specific duty. Doc. 35. Therefore, the undersigned recommends that the defendants' motion to dismiss McCall's negligence claim be GRANTED and that this claim be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

**E.     Disability and Failure to Accommodate Claims**

McCall alleges that she was "denied reasonable accommodation as it pertains to the American with Disability Act at meetings held by Montgomery Housing Authority." Doc. 35. McCall further alleges that she was "denied reasonable accommodation after Nona Eath refused to give Plaintiff an extension on a Housing Choice Voucher, therefore denying her housing." Doc. 35. Finally, McCall alleges that "under the disability act . . . the Montgomery Housing Authority fail to accurate warn landlord as it pertains to the proper use of deadly chemicals and allowing families with children to be expose to known toxin." Doc. 35. None of these allegations state a plausible claim for disability discrimination under the Americans with Disabilities Act ("ADA") or the Fair Housing Act ("FHA").

Although McCall references only the ADA in alleging that MHA failed to provide her with a reasonable accommodation and caused her and her family illness through the

13

spraying of pesticides, disability discrimination and failure to accommodate claims can also be pursued under the FHA.[7]  "Due to the similarity of the ADA and the FHA's protections of individuals with disabilities in housing matters, courts often analyze the two statutes as one." *Caron Found. of Fla., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012).  The court will engage in a combined analysis here.

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Hawkins v. Hamlet, Ltd.*, 296 F. App'x 918, 919 (11th Cir. 2008) (citing 42 U.S.C. § 12132).  Moreover, the FHA makes it "unlawful to discriminate in the rental of, or to otherwise make unavailable or deny, a dwelling because of a disability of the renter or a person associated with the renter." *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1222 (11th Cir. 2016) (citing 42 U.S.C. § 3604(f)(1)).

A defendant "cannot be liable for refusing to grant a reasonable and necessary accommodation if the [defendant] never knew the accommodation was in fact necessary." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008).  "Although a request for accommodation need not employ magic words, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [landlord] to make appropriate inquiries about the possible need for an accommodation." *Ely,* 13 F. Supp. 3d

---

[7] McCall does not assert any claims under § 504 of the Rehabilitation Act. Doc. 35.

at 1231 (internal quotation marks omitted). "Simply put, a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." *Id.* at 1232.

McCall's disability discrimination and failure to accommodate claims, whether under the ADA or the FHA, fail Rule 12(b)(6) scrutiny for a number of reasons. First, McCall never alleges that she is disabled or that a person associated with her (like her children) is disabled. At most, McCall alleges that the defendants sprayed pesticides and committed other negligent actions causing her and her daughter to become sick. But illness is not tantamount to a disability. Moreover, McCall never alleges the accommodation she was seeking, that she made an actual request for a reasonable accommodation to any of the defendants, or that the defendants denied her a requested reasonable accommodation. McCall also never alleges that she or anyone associated with her were subjected to unlawful discrimination because of their disability.

In short, McCall failed to allege a viable disability discrimination or failure to accommodate claim under the ADA and the FHA. *See McManus v. Cherry*, 2010 WL 5638108, at *4–5 (N.D. Fla. Nov. 19, 2010) (recommending dismissal of FHA and ADA disability discrimination and failure to accommodate claims when *pro se* plaintiff did not allege or identify any particular disability), *adopted by* 2011 WL 240816 (N.D. Fla. Jan. 24, 2011). Therefore, the undersigned recommends that the defendants' motion to dismiss McCall's disability discrimination and failure to accommodate claims be GRANTED and that those claims be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

**F.      Racial Discrimination and Retaliation Claims under the Fair Housing Act**

A majority of the allegations in the second amended complaint focus on McCall's claims that the defendants violated the Fair Housing Act by denying her safe and decent housing, forcing her to live in segregated areas as a result of her race and discriminatory housing policies, fraudulently inspecting her housing unit, verbally abusing her, and retaliating against her for complaining about various housing issues by interfering with her attempts to file fair housing complaints and by forcing her to live in unsafe housing. Doc. 35. "As the Eleventh Circuit has repeatedly held, to prevail on a claim under the [Federal] FHA, a plaintiff must demonstrate unequal treatment on the basis of race that affects the availability of housing." *Lowman v. Platinum Prop. Mgmt. Servs., Inc.*, 166 F. Supp. 3d 1356, 1361 (N.D. Ga. 2016) (citing *Hallmark Developers, Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1283 (11th Cir. 2006)) (internal quotation marks omitted).  McCall has alleged sufficient facts to support a claim for discrimination under the FHA because she alleges that the defendants and their policies forced her to live in segregated, unsafe housing because of her race and that the defendants have denied her equal access to fair housing because of her race.

To state a retaliation claim under the Fair Housing Act, a plaintiff must allege that she engaged in protected activity, that she suffered adverse actions, and that the adverse actions were causally related to the protected activity. *Housing Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*, 510 F. Supp. 2d 1003, 1013 (S.D. Fla. 2007).  McCall alleges that she made complaints about MHA and her apartment complex conducting fraudulent inspections of her unit, which affected her housing rights,

16

and that, after she made these complaints, her housing unit was sprayed with heavy pesticides, causing McCall and her daughter to become sick. Doc. 35.  McCall further alleges that, after she reported that an MHA inspector was "using racial under tones and talking verbally abusive" to her, her housing unit was subjected to another fraudulent inspection while MHA tried to prevent her from making a fair housing complaint about the inspector's actions.  Construing these allegations in a light most favorable to McCall, the court concludes that she has adequately pleaded a retaliation claim under the FHA.  Thus, the undersigned recommends that the defendants' motion to dismiss McCall's racial discrimination and retaliation claims under the FHA be DENIED and that these claims be the only two claims allowed to proceed in this litigation.

## IV.  CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the undersigned United States Magistrate Judge that the defendants' Rule 12(b)(6) motion to dismiss (Doc. 41) be GRANTED IN PART and DENIED IN PART as follows:

1. The defendants' motion to dismiss be GRANTED with respect to McCall's claims against Eath and the Montgomery Board of Commissioners because she has failed to perfect service on those defendants within the time frame set by Rule 4(m) and because the Montgomery Board of Commissioners is not an actual entity subject to suit or service of process;

2. The defendants' motion to dismiss be GRANTED with respect to McCall's claims for declaratory and injunctive relief, due process, negligence, civil conspiracy, and disability discrimination and failure to accommodate under the ADA and FHA for failure

to state a claim upon which relief can be granted; and

3. The defendants' motion to dismiss be DENIED with respect to McCall's claims for race discrimination and retaliation under the FHA, with those claims being the only claims allowed to proceed in this litigation.

It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation no later than **October 13, 2017**.  Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the district court.  The parties are advised that this report and recommendation is not a final order of the court, and therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the district court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 29th day of September, 2017.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE